UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| SANDRA M. TINCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:14-CV-493 |
| | ) | (REEVES/GUYTON) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 11 and 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 14 and 15]. Sandra M. Tinch ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On June 18, 2012, the Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), claiming a period of disability which began May 31, 2012. [Tr. 145, 152]. The Social Security Administration denied Plaintiff's application initially and upon reconsideration. [Tr. 86-93]. On December 12, 2013, a hearing was held before an ALJ to review determination of the Plaintiff's claim. [Tr. 38-70]. On March 14, 2014, the ALJ found that the Plaintiff was not disabled. [Tr. 13-34]. The Appeals Council denied the Plaintiff's request for review on August 14, 2014 [Tr. 1-6]; thus, the decision of the ALJ became

the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on October 17, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

I. **ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since May 31, 2012, the alleged onset date (20 CFT 404.1571 *et seq.*, and 416.917 *et seq.*).

3. The claimant has the following "severe" impairments: Disorders of the Back (Discogenic/Degenerative); a Panic Disorder; and a Personality Disorder (20 CFR 404.152(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; occasionally operate foot controls with the bilateral lower extremities; occasionally climb ramps and stairs, ladders, ropes, and scaffolds; frequently balance; and occasionally stoop, kneel, crouch, and crawl. Additionally, she is limited to the performance of simple, routine tasks; can tolerate infrequent (occasional) changes in a routine work setting which are

2

gradually introduced; and limited to work with no public contact, where supervision is infrequent (occasional) and non-confrontational, and contact with co-workers is infrequent (occasional).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 8, 1971, and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.696(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 18-29].

## II. DISABILITY ELIGIBILITY

This case involves an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for

3

DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B); see also 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

4

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the plaintiff could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

5

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Connor v. U.S. Civil Serv. Comm'n, 721 F.2d 1054, 1056 (6th Cir. 1983) (citations omitted). Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes

v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV.     **RELEVANT EVIDENCE**[1]

The Plaintiff was 40-years-old on her alleged onset date of May 31, 2012. [Tr. 145]. She has a high school diploma [Tr. 385] and has performed past relevant work as a retail store assistant manager, grocery store bakery department manager, and cashier [Tr. 179]. The Plaintiff alleges disability, in pertinent part, due to mental impairments, including bipolar disorder, anxiety, and depression. [Tr. 172].

A psychological consultative examination was conducted on August 21, 2012 by Pamela Brody, M.S. [Tr. 384-89]. The Plaintiff reported that she was filing for disability due to anxiety and bipolar disorder, among other psychical ailments. [Tr. 384]. The Plaintiff stated she always had mild problems with depression but symptoms had increased over the years after she experience the death of her father, grandmother, and the result of her son having been sexually abused at the age of three-years-old by another relative. [Tr. 385]. She reported taking psychotropic medications prescribed by her primary care physician who had diagnosed her with bipolar disorder. [Tr. 385]. During the exam, the Plaintiff's mood was depressed and she cried very easily. [Tr. 368]. Ms. Brody found that the Plaintiff could correctly repeat six digits, and recall three of three objects after five minutes and four of four presidents since 1950. [Id.]. The Plaintiff's thought process was organized, she could spell the word "world" backward, name a current event, and complete backward serial 3s to 91 and backwards 5s. [Id.]. The Plaintiff

---

[1] On appeal, the Plaintiff only challenges the ALJ's decision as it pertains to her mental health impairments. Therefore, the Court's discussion of the evidence will be limited to same.

reported that the biggest problem that kept her from working was trouble with crowds. [Tr. 387]. She believes people talk about her and look at her, and she feels like her clothes are not good enough. [Tr. 387]. Ms. Brody found that the Plaintiff's ability to relate to others and social interaction was moderately to markedly limited, her ability to concentrate and pay attention was mildly to moderately limited, and her ability to understand and remember directions was not significantly limited. [Tr. 388].

On September 13, 2012, a Mental Residual Function Capacity Assessment was completed by non-examining state agency consultant, George Livingston, Ph.D. [Tr. 413-15]. Based upon Dr. Livingston's review of the evidence on file, he found in the area of understanding and memory that the Plaintiff was moderately limited in her ability to understand and remember detail instructions, but was not significantly limited in her ability to remember locations and work-like procedures or understand and remember very short and simple instructions. [Tr. 413]. In regard to concentration and persistence, Plaintiff was found to be moderately limited in her ability to carry out detailed instructions, maintain attention for extended periods, work with or in proximity to others without being distracted, and complete a normal workday or workweek without interruption from psychologically based symptoms. [Tr. 413-14]. She showed no limitations in her ability to carry out simply instructions, sustain an ordinary routine without special instructions, make simple work-related decisions, and perform activities within a schedule, maintain regular attendance, or be punctual with customary tolerances. [Tr. 413]. In regard to social interaction, the Plaintiff was found to be markedly limited in her ability to interact appropriately with the general public, moderately limited in her ability to accept instructions and respond appropriately to criticism, and get along with coworkers or peers, and no limitation in her ability to maintain socially appropriate behavior and

ask simple questions or request assistance. [Tr. 414]. Finally, as to adaption, the Plaintiff was found to be moderately limited in her ability to respond appropriately to changes in the work setting and showed no significant limitation in her ability to be aware of normal hazards and take precautions, travel in unfamiliar places, or set realistic goals and make plans independently of others. [Id.].

The Plaintiff received routine mental health treatment at Ridgeview Psychiatric Hospital beginning on February 2, 2013 when she presented for an intake appointment. [Tr. 455-66]. During her intake, the Plaintiff reported that she had to quit work because she "couldn't stand to be around people" and suffered from depression. [Tr. 455]. The Plaintiff reported problems with sleep, crying spells, low energy, low appetite, and weight gain. [Tr. 459, 462]. The Plaintiff was diagnosed with depressive disorder, not otherwise specified, major depressive disorder, recurrent, and posttraumatic stress disorder. [Tr. 466]. Treatment recommendations included medication management and counseling. [Id.].

The Plaintiff began seeing psychiatrist Okan Enyenihi, M.D., on February 8, 2013. [Tr.451]. The Plaintiff was prescribed Cymbalta for depression and Seoquel for sleeping problems. [Tr. 445]. During her May appointment, the Plaintiff reported that she had not started Cymbalta. [Tr. 446]. The Plaintiff returned in June and reported compliance with all medications. [Tr. 512]. Over the course of her remaining appointments up until March 2014, the Plaintiff returned for monthly or bi-monthly appointments where her depression medication was adjusted due to complaints of increased depression and anxiety and her sleeping medication was changed several times as a result of poor sleep and an onset of headaches. [Tr. 504-13, 535-41]. Treatment notes also document that the Plaintiff presented tearful over homeless children and people during the holidays [Tr. 540] and expressed other triggers that increased feelings of

9

depression and anxiety, including the death of her uncle [Tr. 502], complaints of pain in her legs, bladder, hands, and shoulders [Tr. 506, 510], low self-esteem [Tr. 506], and concerns about her son's health and sexual abuse as a young child [Tr. 446, 448, 450].

On February 15, 2013, the Plaintiff attended her first therapy session with Amy Crabtree, LCSW. [Tr. 454]. The Plaintiff related she had been crying a lot the past several days due to worrying about her diabetic son and shared that she has of a history of bad relationships and feeling guilty about her son being sexually abused. [Id.]. Ms. Crabtree recommended bi-weekly therapy appointments to identify and work on treatment goals. [Id.]. At her next appointment, the Plaintiff identified self-esteem issues and crying daily as areas she wished to improve. [Tr. 453]. The Plaintiff attended therapy again on March 8, 2013 and April 17, 2013, where she expressed frustrations over different stressors, including child support, dealing with her ex-husband and his girlfriend, and caring for a live-in uncle. [Tr. 450-51]. Thereafter, the Plaintiff did not return to therapy until November 11, 2013. [Tr. 544]. The purpose of the appointment was to "check in with client about changes since last date of service and address non-compliance history." [Tr. 544]. At that time, the Plaintiff related she had "an incurable bladder disease" that caused her to be sick and required weekly appointments. [Id.]. As a result, she requested monthly appointments instead. [Id.]. Plaintiff, however, did not return until four months later on March 20, 2014. [Tr. 542]. She reported feeling very upset over a recent medication management appointment with a different psychiatrist. [Id.]. The Plaintiff shared that she could hit the psychiatrist if she saw her. [Id.]. The Plaintiff also stated she had attended three funerals over a short period of time and thought it was "stupid" to discuss suicidal thoughts. [Id.]. Ms. Crabtree noted that the Plaintiff "showed a significant change in personality from the last regular sessions with therapist" and her "mood appeared darker today." [Id.]

## V. POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed: (1) to give appropriate weight to the opinion of the Plaintiff's treating physician; and (2) new and material evidence exists, warranting a remand in this matter. [Doc. 12 at 6].

The Commissioner responds that the Plaintiff fails to present or develop an argument that a sentence six remand is justified. [Doc. 15 at 4]. Specifically, the Commissioner argues that the Plaintiff fails to set forth any argument whatsoever to support the supposition that the ALJ failed to properly apply the treating physician rule in this case. [Id. at 8-10]. In addition, the Commissioner maintains that the evidence submitted by the Plaintiff after the ALJ rendered his decision is not new or material and good cause has not been demonstrated. [Id. at 4-8].

## VI. ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A. Treating Physician's Rule

The Plaintiff contends that the ALJ failed to "give appropriate weight to the treating-physician's opinion pursuant to 20 C.F.R. § 404.15247(2)(b)-(c)" but provides no further argument and fails to identify a treating physician's opinion. [Doc. 12 at 6]. The Plaintiff simply states that updated medical records were obtained from Ridgeview Psychiatric Hospital after the ALJ rendered his decision and said records demonstrate that the Plaintiff's condition has worsened. [Id.]. The Plaintiff then briefly discusses a treatment note from her March 20, 2014 therapy session with Ms. Crabtree. Thus, it appears to the Court that the Plaintiff is arguing that

11

the ALJ should have applied the treating physician rule to Ms. Crabtree.[2]

As an initial matter, the Court notes that when a claimant's argument is undeveloped, as it is here, the Court is unable to engage in any meaningful review of the alleged error and may find that the issue is waived. See McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (holding "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones") (quoting with approval Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n, 59 F.3d 284, 293–94 (1st Cir. 1995)). However, the Court finds the Plaintiff's argument fails for other reasons.

First, the mental health treatment records, including Ms. Crabtree's treatment notes, were submitted after the ALJ rendered his decision. The Court may not consider new evidence in its substantive review of the ALJ's denial of benefits, see Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001), an issue addressed more fully below. Second, Ms. Crabtree is a licensed clinical social worker ("LCSW"). [Tr. 461, 466]. As a LCSW, Ms. Crabtree is not an acceptable medical source triggering the treating physician rule. See 20 C.F.R. §§ 404.1513(a), 416.913(a) (stating

---

[2] To the extent that the Plaintiff would argue that the ALJ should have applied the treating physician rule to another source, the Court rejects the argument. The only other mental health providers of record include Plaintiff's treating psychiatrist, Dr. Enyenihi, who did not provide an opinion in this case [Tr. 444-50, 504-13, 534-41], see Pedigo v. Astrue, 1:09-CV-93, 2009 WL 6336228, at *6 (E.D. Tenn. Dec. 14, 2009) (explaining that the "rule of deference to a treating physician's opinion, however, is inapposite when the treating physician has not offered an opinion to which the ALJ can defer") adopted by 1:09-CV-93, 2010 WL 1408427 (E.D. Tenn. Apr. 2, 2010) (citation omitted), and a second psychiatrist with Ridgeview Psychiatric Hospital, Dr. Bhateja, who appears to have seen the Plaintiff on one occasion [Tr. 534] and therefore does not qualify as a treating physician, see 20 C.F.R. § 404.1502 (stating that a treating source is an acceptable medical source "who has, or had has, an ongoing treatment relationship with you"). Although absent from the Plaintiff's brief, the Plaintiff did attend regular appointments with primary care physician Dr. Murugesen Dhandapani since 2007 and was prescribed additional medication for anxiety. [Tr. 275-325, 326-69, 417-30, 433-43, 474-78, 488-90]. However, Dr. Dhandapani never rendered an assessment or opinion of the limiting effects, if any, caused by the Plaintiff's anxiety and depression. [Id.]; see Pedigo, 2009 WL 6336228, at *6.

that only "acceptable medical sources" can provide evidence to establish the existence of a medically determinable impairment); Payne v. Comm'r of Soc. Sec., 402 F. App'x 109, 119 (6th Cir. 2010) (holding that "social workers are not acceptable medical sources"). Moreover, even if Ms. Crabtree qualified as a treating physician under the regulations, she does not provide an opinion or assessment on what effect, if any, the Plaintiff's mental health impairments have on her ability to perform work. See Pedigo v. Astrue, 1:09-CV-93, 2009 WL 6336228, at *6 (E.D. Tenn. Dec. 14, 2009) (requiring an actual opinion of functionality to invoke the treating physician rule "because disability is determined by reference to the functional limitations imposed by a condition, not the condition itself") adopted by 1:09-CV-93, 2010 WL 1408427 (E.D. Tenn. Apr. 2, 2010) (citing Foster, 853 F.2d 488–89).

Accordingly, to the extent that the Plaintiff argues that the ALJ failed to properly apply the treating physician rule to Ms. Crabtree, the Court finds the argument without merit.

### B. New Evidence

The Plaintiff also argues that the Court should consider the updated records from Ridgeway Psychiatric Hospital because they demonstrate worsening conditions of the Plaintiff's mental health. [Doc. 12 at 6-7]. These additional mental health records consist of treatment notes from medication management appointments that occurred between November 20, 2013 and March 4, 2014 [Tr. 534-41] and two therapy sessions with Ms. Crabtree that took place on November 11, 2013 and March 20, 2014 [Tr. 534-44]. The Plaintiff contends that these records constitute new and material evidence pursuant to 20 C.F.R. §404.970(b) and warrant a remand. [Id. at 6].

While the Court may not consider new evidence in its substantive review of the ALJ's denial of benefits, the Court may remand the case pursuant to 42 U.S.C. § 405(g) "for further

13

Case 3:14-cv-00493-PLR-HBG   Document 16   Filed 08/26/15   Page 13 of 17   PageID #: 630

administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." Foster, 279 F.3d at 357 (quoting Cline v. Comm'r of Soc. Sec. 96 F.3d 146, 148 (6th Cir. 1996)). This is referred to as a "sentence six remand." Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988). The proponent of the new evidence bears the burden of proving all three elements. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 589 (6th Cir. 2005).

Evidence is considered "new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" Foster, 279 F.3d at 357 (quoting Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990)). "New evidence must indeed be new; it cannot be cumulative of evidence already in the record." Pickard v. Comm'r of Soc. Sec., 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002) (quoting Elliott v. Apfel, 28 F. App'x 420, 424 (6th Cir. 2002)).

Material evidence exists if there is a "reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." Foster, 279 F.3d at 357 (quoting Sizemore, 865 F.2d at 711). Moreover, "[e]vidence is material if it is probative of the claimant's condition during the time period at issue before the ALJ." Pickard, 224 F. Supp. 2d at 1171.

Finally, good cause is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." Foster, 279 F.3d at 357. "The mere fact that the evidence at issue was not in existence at the time of the ALJ's decision does not establish good cause." Pickard, 224 F. Supp. 2d at 1171. Furthermore, "this circuit has taken a harder line on the good cause test." Oliver v. Sec'y Health & Human Servs., 804 F.2d 964, 966 (6th Cir. 1986) (citing Willis v. Sec'y Health & Human Servs., 727 F.2d 551, 554 (6th Cir. 1984) (noting that "Willis held that in order to show good cause the

14

complainant must give a valid reason for his failure to obtain evidence prior to the hearing").

The Court finds that the Plaintiff has failed to satisfy her burden in regard to all three elements. Consistent with the Plaintiff's treating physician argument, the Plaintiff makes a blanket assertion that the updated mental health treatment records are new and material but fails to develop the argument any further. Rather, the Plaintiff simply recites several notations made by Ms. Crabtree during the March 20, 2014 therapy session, offering the Court no explanation as to how said treatment notes, or any of the other records submitted, are new, material, or why good cause exists for not submitting them sooner. The burden is on the Plaintiff to show a sentence six remand is warranted, and such minimal efforts exhibited by the Plaintiff fall short of the mark. The Court's own analysis, however, establishes that a sentence six remand is not appropriate.

First, the additional records are not new because the majority of the records existed at the time of the administrative proceedings. With the exception of the therapy session dated March 20, 2014 [Tr. 542-43], the records range from November 20, 2013 to March 4, 2014 [Tr. 534-41], predating the ALJ's March 14, 2014 decision [Tr. 13-34]. Therefore, said records are not new because they were in existence and available to the Plaintiff for submission to the ALJ for consideration. Foster, 279 F.3d at 357.

As to the March 20, 2014 therapy session, which took place a week after the ALJ issued his decision, the Court finds that the record is not new because it provides cumulative evidence already in the administrative record and considered by the ALJ. Specifically, the notes from the therapy session identify particular situational stressors that the Plaintiff had recently been dealing with, including frustration toward a psychiatrist after a recent appointment and having attended three funerals within a short period for time. [Tr. 542]. In his decision, the ALJ considered

15

numerous other situational stressors identified by the Plaintiff, such as dealing with her son's health problems and sexual abuse as a young child, a long-term problem with a previous co-worker, child support issues, a "history of bad relationships," and difficulties with her ex-husband and his girlfriend. [Tr. 28]. The ALJ found that common situational stressors experienced by the Plaintiff led to psychological symptoms that "are likely only transient and expected reactions to such stressors, as opposed to convincing evidence of any chronic mental health condition." [Tr. 24]. This single therapy record does not add anything new for the ALJ to consider, but instead provides another instance of situational stressors experienced by Plaintiff.

The Court also finds that the additional records are not material because they do not provide a "reasonable probability" that had they been considered by the ALJ, the outcome in this matter would have been different. The majority of the records detail the Plaintiff's subjective complaints as well as adjustments to her psychotropic medications; they do not provide evidence of additional, worsening, or debilitating symptoms. [Tr. 535-41]. While Ms. Crabtree noted on March 20, 2014 that the Plaintiff showed a "significant change in personality from the last regular sessions with [the] therapist" and that the Plaintiff's "mood appeared darker today" [Tr. 542], the Court finds these remarks of little probative value given that the Plaintiff waited four months to return to therapy despite being recommended that she attend every four weeks. [Tr. 542-44].

Lastly, the Court has not found, and the Plaintiff has not shown, any reason that these mental health treatment records, with the exception of the last therapy session with Ms. Crabtree, could not have been requested and submitted to the ALJ prior to the hearing or any time before his decision was rendered.

Accordingly, the Court finds the Plaintiff's argument unpersuasive.

16

## VII. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[3] that the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 11**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 14**] be **GRANTED**.

Respectfully submitted,

_Bruce Guyton_
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).